1814.

SHALLER
et al.
*v.*
BRAND.

---

## EATON *against* The Commonwealth.

### IN ERROR.

THE plaintiff in error was convicted of murder of the first degree, at a Court of Oyer and Terminer for *York* county in *April* 1813.

On the 8th of *January* 1813, a precept by the judges of the Common Pleas was directed to the sheriff and county commissioners, reciting the intention to hold an Oyer and Terminer on the 5th of *April* following, and commanding them or any two of them, " to meet on a certain day, " at least thirty days before the first *Monday* in *April*, at " the commissioners' office, and draw from the respective " wheels prepared for that purpose, in pursuance of several " acts of assembly, (naming them) a sufficient number of " sober and judicious persons for grand and petit jurors:

*Lancaster,*
*Saturday,*
*May 28.*

If process goes to the sheriff and county commissioners to *draw* a jury for a Court of Oyer and Terminer, and it be not returned so that it shall appear in some part of the jury process that the jurors have been legally *drawn*, it is error.

1814.

EATON
*v.*
COMMON-
WEALTH.

" and that a copy of the several lists of jurors so drawn as
" aforesaid, he the said sheriff should thereafter without
" delay deliver to the prothonotary of the county of *York*,
" that the same might be fixed up in his office, for the in-
" spection of all concerned, and that the proper and neces-
" sary *venire* might by him be made out and delivered to
" him the said sheriff for the summoning and returning the
" jurors aforesaid." Then followed the order to bring all
prisoners &c. before the said judges, to notify all justices,
constables, coroner &c., that they appear &c., and to make
public proclamation of the time of holding the said court.

Annexed to this precept, on the return thereof, was a list
attached, containing the names of all the justices of the
peace, and also that of the coroner of the county, and this
was all that appeared as to the return.

The *venire* to the sheriff on the 1st of *March* 1813, began,
" In the name and by the authority of the Commonwealth
" of *Pennsylvania*, *Walter Franklin*, *Hugh Glasgow*, and
" *Jacob Hostetter*, to the sheriff of *York* county, Greeting.
" *We* command you &c."

Annexed to this writ was a pannel of the grand jurors,
and another of the petty jurors, and the customary return by
the sheriff was indorsed on the writ. All the petty jurors
had their places of abode annexed, but four wanted addi-
tions. All the grand jurors had their places of abode annex-
ed, but twenty-one wanted additions.

The record being removed to this Court by writ of error,
the following errors were assigned: 1. That the style of the
process was not in the name of the Commonwealth, but of
*Walter Franklin* and others the judges. 2. That it did not
appear that there had been any legal process to summon the
particular grand and petit jurors, because there had been no
return shewing that those jurors had been drawn. 3. That
additions were wanting to the names of several of the grand
and petit jurors. 4. That the jury were drawn and selected
by the sheriff and county commissioners, before any autho-
rity had issued for that purpose.

*Cassatt* and *Kelly* argued for the plaintiff in error.

*Stroman* for the Commonwealth.

TILGHMAN C. J. The plaintiff in error was indicted in York county for the murder of *Margaret Herman*, and convicted and sentenced for murder of the first degree, at a Court of Oyer and Terminer and general gaol delivery. Her counsel have assigned several errors, but my opinion shall be confined to one. By the act of 4th *April* 1807, it is enacted, that whenever any process shall be issued for summoning a jury, the sheriff shall immediately on receiving the same, give notice to the county commissioners, who or any two of whom shall with the sheriff proceed to draw out of the proper wheels, the names of the number of jurymen required, in the manner prescribed by the said act, and it shall be the duty of the sheriff to summon the several persons whose names are so drawn out, at least ten days previous to the sitting of the Court, and to make return in what manner he has served such process.

It appears by the record before us, that a precept was issued on the 8th of *January* 1813, whereby command was given to the sheriff and the county commissioners, that they should proceed to draw the names of a sufficient number of persons to serve as grand and petit jurors at a Court of Oyer and Terminer and general gaol delivery, to be held on the first *Monday* of *April* next following, but it does not appear by any return of the sheriff or commissioners, that they ever proceeded to draw the jurors according to the command of the writ. Afterwards, on the 1st of *March* 1813, a *venire facias* was issued, commanding the sheriff to summon twenty-four grand jurors and fifty jurors, whose names are mentioned in the writ. The return is indorsed, " executed as within I am commanded," and signed by the sheriff. It appears therefore on the whole record, that the jurors were summoned, but it does not appear that they were drawn. But unless they were drawn, the prothonotary was not authorized to issue a *venire facias* commanding that those particular persons should be summoned. If there had been but one precept, commanding the sheriff to cause to come before the judges at a certain day and place, a sufficient number of jurors &c., without entering into the details of his duty, and he had made a general return, that he had summoned them as he was commanded, with a pannel containing their names annexed, it might have been in-

1814.

EATON
v.
COMMON-
WEALTH.

tended, that in summoning them he had complied with all legal requisites. But that is not the case here, for the sheriff is commanded to summon particular persons, and he only returns that he has summoned those persons, but to the other precept commanding him to draw the names of the jurors he has made no return; so that it does not appear on this record either expressly or by necessary implication, that the persons who served as jurors were summoned according to law. I am therefore of opinion that the judgment should be reversed.

YEATES J. and BRACKENRIDGE J. were of the same opinion.

Judgment reversed.